RCVD – USDC COLA SC
JUL 10 '26 AM10:40

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| DEANGELO S. ANDERSON,<br>　*Plaintiff,*<br><br>v.<br><br>AMERICAN EXPRESS NATIONAL BANK;<br>and<br>TD BANK USA, N.A.,<br>　*Defendants.* | Case No.:<br>3:26-cv-02744-SAL-TER<br><br>**COMPLAINT FOR VIOLATIONS OF THE FAIR CREDIT REPORTING ACT**<br>**(15 U.S.C. §§ 1681 et seq.)**<br><br>**JURY TRIAL DEMANDED** |

## PRELIMINARY STATEMENT

1. This is an action for actual, statutory, and punitive damages, attorney's fees where applicable, and costs, brought by Plaintiff DeAngelo S. Anderson, a consumer, against Defendants American Express National Bank ("AMEX") and TD Bank USA, N.A., d/b/a Target Card Services ("TD Bank"), for their willful and negligent violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 *et seq.* ("FCRA"), and specifically 15 U.S.C. § 1681s-2(b).

2. Defendants are "furnishers" of information under the FCRA. Upon receiving notice of Plaintiff's dispute through the Automated Consumer Dispute Verification ("ACDV") system operated by Experian Information Solutions, Inc.

("Experian"), Defendants were required to conduct a reasonable investigation of the disputed tradelines, review all relevant information provided by the consumer reporting agency, correct or delete inaccurate or incomplete information, and report the results of that investigation to Experian and to every other national consumer reporting agency to which they had previously furnished the information. 15 U.S.C. § 1681s-2(b)(1)(A)–(E).

3. Defendants did none of that. Instead, on receipt of ACDV notice from Experian, Defendants performed only a perfunctory database check, "verified" plainly inaccurate data — including, for AMEX account ending 2019, a reported balance of $1,136 on an account with a stated credit limit of $1,000, and, for TD Bank Target account ending 5975, a reported past-due amount identical to the full charge-off balance on a closed account — and returned that "verified" response to Experian without correction. Experian, in reliance on Defendants' responses, refused to correct or delete the inaccurate information.

4. As a direct and proximate result of Defendants' violations, Plaintiff has suffered actual damages, including but not limited to the denial of credit by JPMorgan Chase Bank, N.A. within the last thirty days, damage to his creditworthiness, emotional distress, humiliation, and loss of time and expense in attempting to correct Defendants' inaccuracies.

## JURISDICTION AND VENUE

1. This Court has federal-question jurisdiction over Plaintiff's FCRA claims pursuant to 15 U.S.C. § 1681p and 28 U.S.C. § 1331.

2. Venue is proper in the District of South Carolina, Columbia Division, pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions

giving rise to the claim occurred in this District — Plaintiff resides in Columbia, South Carolina; Plaintiff's Experian credit file is maintained on his South Carolina address and is regularly requested and received by lenders reviewing his applications made from South Carolina; Plaintiff mailed his dispute to Experian from South Carolina; and Plaintiff received the adverse-action decision from JPMorgan Chase Bank, N.A. while residing in South Carolina.

3. Both Defendants regularly conduct business in the State of South Carolina, including in this District, by extending consumer credit to residents of this District, furnishing information about those residents to the national consumer reporting agencies, and participating in the ACDV dispute-verification system with respect to such residents. Personal jurisdiction is therefore proper.

## PARTIES

1. Plaintiff **DeAngelo S. Anderson** is a natural person residing at 1310 Oakcrest Dr., Apt. 1012, Columbia, South Carolina 29223. Plaintiff is a "consumer" within the meaning of 15 U.S.C. § 1681a(c).

2. Defendant **American Express National Bank** ("AMEX") is a national banking association with its principal place of business in Sandy, Utah. AMEX regularly furnishes information relating to consumers to one or more consumer reporting agencies for inclusion in consumer reports and is therefore a "furnisher of information" within the meaning of 15 U.S.C. § 1681s-2. AMEX may be served through its registered agent for service of process.

3. Defendant **TD Bank USA, N.A.** ("TD Bank") is a national banking association with its principal place of business in Wilmington, Delaware, and operates the "Target Credit Card" / "TargetCredit" account program in conjunction with

Target Corporation. TD Bank regularly furnishes information relating to consumers to one or more consumer reporting agencies for inclusion in consumer reports and is therefore a "furnisher of information" within the meaning of 15 U.S.C. § 1681s-2. TD Bank may be served through its registered agent for service of process.

## STATUTORY FRAMEWORK

1. The FCRA imposes independent duties on furnishers of information after they receive notice of a consumer dispute from a consumer reporting agency. Specifically, 15 U.S.C. § 1681s-2(b)(1) requires that, upon receiving such notice, the furnisher must:

    1. conduct an investigation with respect to the disputed information;

    2. review all relevant information provided by the consumer reporting agency pursuant to § 1681i(a)(2);

    3. report the results of the investigation to the consumer reporting agency;

    4. if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the furnisher had furnished the information and that compile and maintain files on consumers on a nationwide basis; and

    5. if the disputed information is found to be inaccurate or incomplete or cannot be verified, promptly modify the information, delete the information, or permanently block the reporting of that information.

2. The furnisher's § 1681s-2(b) investigation must be "reasonable" — meaning something more than a perfunctory or superficial rubber-stamp of the same data already in the furnisher's own system. *Johnson v. MBNA America Bank, N.A.,* 357 F.3d 426, 431 (4th Cir. 2004) (holding that the term "investigation" in §

1681s-2(b) "requires some degree of careful inquiry" and that a furnisher who merely confirms its own records has not conducted a reasonable investigation).

3. A private right of action lies against a furnisher for violations of § 1681s-2(b). *Saunders v. Branch Banking & Trust Co.*, 526 F.3d 142, 149 (4th Cir. 2008).

4. A negligent violation of § 1681s-2(b) exposes the furnisher to actual damages, attorney's fees, and costs under 15 U.S.C. § 1681o. A willful violation exposes the furnisher to actual damages or statutory damages of not less than $100 and not more than $1,000, punitive damages, attorney's fees, and costs under 15 U.S.C. § 1681n.

5. "Willfulness" under the FCRA includes reckless disregard of statutory duty. *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 57 (2007).

## FACTS COMMON TO ALL COUNTS

### A. Plaintiff's June 26, 2026 dispute to Experian

1. On June 26, 2026, Plaintiff mailed a written dispute to Experian Information Solutions, Inc. at P.O. Box 4500, Allen, TX 75013, pursuant to 15 U.S.C. § 1681i(a), disputing five tradelines described in paragraphs 18 through 27 below. The dispute identified the accounts by furnisher name and last-four digits, identified specific field-level inaccuracies (including balance, past due, credit limit, payment history, date of first delinquency, and the absence of the CDIA Metro 2 "XB" disputed-account compliance code), and requested full verification of every data field.

2. On July 2, 2026, Experian issued written Dispute Results to Plaintiff bearing Report Number 3326-2829-18. The Dispute Results stated with respect to each of the disputed tradelines that "the information you disputed has been verified as

accurate" or "updated." On information and belief, Experian arrived at that outcome by transmitting Automated Consumer Dispute Verification ("ACDV") forms to each of the Defendants and receiving back "verified" or "modified" responses from Defendants that failed to correct any of the field-level inaccuracies identified in Plaintiff's dispute. That ACDV transmission constitutes the notice contemplated by 15 U.S.C. § 1681i(a)(2) and triggered each Defendant's independent duties under 15 U.S.C. § 1681s-2(b).

## B. Defendant AMEX — Four inaccurate tradelines

1. **AMEX Account Ending 2341 (also reported ····11973).** As of Experian's July 2, 2026 report, AMEX furnished to Experian a reported balance of **$4,351** and a reported past-due amount of **$3,564** on a charged-off, creditor-closed account, while simultaneously furnishing a written-off amount of **$4,358**. The reported balance and the reported written-off amount cannot both be correct on a static, closed, charged-off account — they differ by seven dollars and describe the same obligation. AMEX also failed to furnish the CDIA Metro 2 Compliance Condition Code "XB" (account disputed by consumer) despite Plaintiff's disputed FCBA history on the account being reflected in Experian's file as "consumer disagrees."

2. **AMEX Account Ending 0423 (also reported ····33973).** AMEX furnished a reported balance of **$2,615** and past-due of **$2,420** on a charged-off, closed account, with a payment-history grid showing "CO" (charge-off) from July 2023 through January 2026, then a gap from February 2026 through April 2026, then "CO" resuming in May and June 2026. A static, closed, charged-off account does not lawfully generate a discontinuous CO grid; the discontinuity is on its

face either inaccurate or misleading. AMEX further failed to furnish the CCC "XB" disputed-account code.

3. **AMEX Account Ending 0511 (also reported ····16213).** AMEX furnished a reported balance of **$4,650** and past-due of **$3,517** on a charged-off, closed account. A closed, fully charged-off account cannot lawfully sustain a $3,517 current-period past-due amount. On information and belief, the Date of First Delinquency ("DOFD") furnished by AMEX for this tradeline is either null or inconsistent with the July/August 2023 charge-off onset shown in the payment-history grid, implicating the obsolescence and re-aging analysis under 15 U.S.C. § 1681c(a)(4). AMEX further failed to furnish the CCC "XB" disputed-account code.

4. **AMEX Account Ending 2019 (also reported ····196523).** AMEX furnished a reported balance of **$1,136** on an account with a stated credit limit of **$1,000**. The reported balance therefore exceeds the stated credit limit by $136 — an impossibility that (a) is inaccurate on its face and (b) produces a false utilization ratio of approximately 113.6% on that tradeline, which materially depresses Plaintiff's credit score computed on Experian data. AMEX further failed to furnish the CCC "XB" disputed-account code.

5. Each of the AMEX tradelines described in paragraphs 18 through 21 was included in Plaintiff's June 26, 2026 dispute to Experian. Upon receipt of the resulting ACDV notice from Experian, AMEX was required by 15 U.S.C. § 1681s-2(b) to conduct a reasonable investigation of each field-level inaccuracy, correct or delete the inaccurate information, and report the corrected information back to Experian and to every other nationwide consumer reporting agency to which AMEX had furnished the information.

6. AMEX did none of the foregoing. AMEX instead performed only a perfunctory database check that merely re-confirmed the same inaccurate data already contained in AMEX's own records. AMEX's investigation was therefore not "reasonable" within the meaning of § 1681s-2(b) and *Johnson v. MBNA*, 357 F.3d 426 (4th Cir. 2004).

## C. Defendant TD Bank — Target Credit account ending 5975

1. TD Bank furnished to Experian a Target Credit tradeline ending 5975 with a reported balance of **$2,178**, a reported past-due amount of **$2,178**, and a reported written-off amount of **$2,178** — three identical figures on a single closed, charged-off account.

2. A static, closed, charged-off account cannot lawfully sustain an ongoing current-period past-due amount that is identical to the entire charge-off balance month after month; that composite of fields is either inaccurate or, at minimum, materially misleading to a reasonable user of the credit report. *Saunders*, 526 F.3d at 148 ("A consumer report that contains technically accurate information may be deemed 'inaccurate' if the statement is presented in such a way that it creates a misleading impression.").

3. On information and belief, the DOFD and Date-Closed / Date-of-Last-Activity fields furnished by TD Bank for this tradeline are either null or inconsistent with the June 2023 – June 2025 CO grid shown on the tradeline, implicating re-aging analysis under 15 U.S.C. § 1681c(a)(4). TD Bank further failed to furnish the CCC "XB" disputed-account code.

4. The TD Bank tradeline described in paragraphs 24 through 26 was included in Plaintiff's June 26, 2026 dispute to Experian. Upon receipt of the resulting ACDV notice from Experian, TD Bank was required by 15 U.S.C. § 1681s-2(b)

to conduct a reasonable investigation, correct or delete the inaccurate or misleading information, and report the corrected information back to Experian and to every other nationwide consumer reporting agency. TD Bank did none of the foregoing.

### D. Damages — Chase adverse action within the last 30 days

1. Within the last thirty (30) days prior to the filing of this Complaint, Plaintiff submitted an application for a credit product to JPMorgan Chase Bank, N.A. ("Chase"). Chase, in reliance on Plaintiff's consumer report as maintained by Experian and populated in material part by the inaccurate tradelines furnished by Defendants, denied Plaintiff's application. Chase displayed the following on-screen adverse-action notice to Plaintiff:

   *"Thanks for applying, DeAngelo. We're unable to approve your application. You'll receive a letter with more information about our decision within 7 to 10 days."*

   Chase's adverse-action letter under 15 U.S.C. § 1681m(a) is pending at the time of filing and will be produced in discovery.

2. Plaintiff's applications for credit have been, and continue to be, materially harmed by Defendants' inaccurate reporting. The AMEX account ending 2019 alone — reporting a balance of $1,136 against a credit limit of $1,000 — creates a false 113.6% utilization ratio that any automated underwriting model treats as a severe negative factor. Aggregated with the three other AMEX charge-off tradelines (totaling $11,616 in reported balances and $9,501 in reported past-due amounts) and the TD Bank Target tradeline ($2,178 balance / $2,178 past-due), Defendants' reporting has driven Plaintiff's Experian-based credit score

materially below the underwriting cutoffs used by mainstream lenders such as Chase.

3. In addition to the Chase denial, Plaintiff has suffered damage to his reputation and creditworthiness, emotional distress, humiliation, anxiety, loss of sleep, and loss of time and out-of-pocket expense (including postage, certified-mail fees, copying, and time diverted from work and family) in attempting to correct Defendants' inaccuracies.

## COUNT I — VIOLATION OF 15 U.S.C. § 1681S-2(B) (WILLFUL) (AGAINST DEFENDANT AMERICAN EXPRESS NATIONAL BANK)

1. Plaintiff realleges and incorporates paragraphs 1 through 30 as though fully set forth herein.

2. AMEX received notice from Experian, via the ACDV system, of Plaintiff's June 26, 2026 dispute regarding the four AMEX tradelines identified in paragraphs 18 through 21. That ACDV notice triggered AMEX's independent duties under 15 U.S.C. § 1681s-2(b).

3. AMEX willfully violated 15 U.S.C. § 1681s-2(b)(1)(A)–(E) by, among other things:

    1. failing to conduct a reasonable investigation of the disputed field-level inaccuracies, including the mathematically impossible balance-over-limit condition on account ending 2019, the balance-vs.-written-off discrepancy on account ending 2341, the discontinuous CO grid on account ending 0423, and the past-due-on-closed-account condition on account ending 0511;

    2. failing to review all relevant information transmitted by Experian in the ACDV;

    3. failing to correct or delete inaccurate or unverifiable information;

    4. failing to modify, delete, or permanently block the inaccurate information; and

    5. failing to report the results of a proper investigation to Experian and to the other nationwide consumer reporting agencies to which AMEX had previously furnished the information.

4. AMEX's violations were willful within the meaning of 15 U.S.C. § 1681n and *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47 (2007). In particular, AMEX acted with reckless disregard of its statutory duties by adopting and implementing an ACDV dispute-response process that, on information and belief, consists primarily of a database re-check of the same data being disputed and does not include any independent verification of source documents, statements, or the mathematical consistency of the fields being furnished. A furnisher of AMEX's size, sophistication, and volume of dispute traffic that reports a balance in excess of its own stated credit limit — and, upon dispute, "verifies" that impossibility — has acted in reckless disregard of § 1681s-2(b).

5. As a direct and proximate result of AMEX's willful violations, Plaintiff has suffered actual damages as described in paragraphs 28 through 30, and is further entitled to statutory damages of not less than $100 and not more than $1,000 per violation, punitive damages, costs, and reasonable attorney's fees to the extent applicable, pursuant to 15 U.S.C. § 1681n.

## COUNT II — VIOLATION OF 15 U.S.C. § 1681S-2(B) (NEGLIGENT) (AGAINST DEFENDANT AMERICAN EXPRESS NATIONAL BANK, IN THE ALTERNATIVE)

1. Plaintiff realleges and incorporates paragraphs 1 through 30 as though fully set forth herein.

2. In the alternative to Count I, AMEX negligently violated 15 U.S.C. § 1681s-2(b)(1)(A)–(E) by failing to conduct a reasonable investigation and by failing to correct, modify, delete, or permanently block the inaccurate information described in paragraphs 18 through 21.

3. As a direct and proximate result of AMEX's negligent violations, Plaintiff has suffered actual damages as described in paragraphs 28 through 30, and is entitled to those actual damages plus costs and reasonable attorney's fees to the extent applicable, pursuant to 15 U.S.C. § 1681o.

## COUNT III — VIOLATION OF 15 U.S.C. § 1681S-2(B) (WILLFUL) (AGAINST DEFENDANT TD BANK USA, N.A.)

1. Plaintiff realleges and incorporates paragraphs 1 through 30 as though fully set forth herein.

2. TD Bank received notice from Experian, via the ACDV system, of Plaintiff's June 26, 2026 dispute regarding the TargetCredit tradeline ending 5975 identified in paragraphs 24 through 27. That ACDV notice triggered TD Bank's independent duties under 15 U.S.C. § 1681s-2(b).

3. TD Bank willfully violated 15 U.S.C. § 1681s-2(b)(1)(A)–(E) by, among other things:

   1. failing to conduct a reasonable investigation of the disputed field-level inaccuracies, including the identical $2,178 balance / past-due / written-off composite, the DOFD and Date-Closed / DLA verification issues, and the absent CCC "XB" flag;

   2. failing to review all relevant information transmitted by Experian in the ACDV;

   3. failing to correct or delete inaccurate or misleading information;

   4. failing to modify, delete, or permanently block the inaccurate information; and

   5. failing to report the results of a proper investigation to Experian and to the other nationwide consumer reporting agencies.

4. TD Bank's violations were willful within the meaning of 15 U.S.C. § 1681n and *Safeco*, 551 U.S. at 57. TD Bank, a national banking association servicing a nationwide credit-card program, has actual and constructive knowledge that reporting a past-due amount identical to a full charge-off balance on a closed account month after month is either inaccurate or materially misleading, and it has recklessly disregarded that knowledge in adopting an ACDV-response process that "verifies" that composite without correction.

5. As a direct and proximate result of TD Bank's willful violations, Plaintiff has suffered actual damages as described in paragraphs 28 through 30, and is further entitled to statutory damages of not less than $100 and not more than $1,000 per violation, punitive damages, costs, and reasonable attorney's fees to the extent applicable, pursuant to 15 U.S.C. § 1681n.

## <u>COUNT IV — VIOLATION OF 15 U.S.C. § 1681S-2(B) (NEGLIGENT) (AGAINST DEFENDANT TD BANK USA, N.A., IN THE ALTERNATIVE)</u>

1. Plaintiff realleges and incorporates paragraphs 1 through 30 as though fully set forth herein.

2. In the alternative to Count III, TD Bank negligently violated 15 U.S.C. § 1681s-2(b)(1)(A)–(E) by failing to conduct a reasonable investigation and by failing to correct, modify, delete, or permanently block the inaccurate information described in paragraphs 24 through 27.

3. As a direct and proximate result of TD Bank's negligent violations, Plaintiff has suffered actual damages as described in paragraphs 28 through 30, and is entitled to those actual damages plus costs and reasonable attorney's fees to the extent applicable, pursuant to 15 U.S.C. § 1681o.

## <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff DeAngelo S. Anderson respectfully requests that this Court enter judgment against Defendants American Express National Bank and TD Bank USA, N.A., jointly and severally where applicable, and grant the following relief:

1. Actual damages, in an amount to be proven at trial, pursuant to 15 U.S.C. §§ 1681n and 1681o;

2. Statutory damages of not less than $100 and not more than $1,000 per violation, pursuant to 15 U.S.C. § 1681n(a)(1)(A);

3. Punitive damages, in an amount to be determined by the trier of fact, pursuant to 15 U.S.C. § 1681n(a)(2);

4. Costs of this action pursuant to 15 U.S.C. §§ 1681n(a)(3) and 1681o(a)(2);

5. Reasonable attorney's fees pursuant to 15 U.S.C. §§ 1681n(a)(3) and 1681o(a)(2), to the extent Plaintiff retains counsel during the pendency of this action;

6. An order directing Defendants to correct or delete the inaccurate and unverifiable information identified in paragraphs 18 through 27 of this Complaint from all consumer reporting agency files to which Defendants have furnished the information;

7. Pre- and post-judgment interest as allowed by law; and

8. Such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all issues so triable.

Dated: _____ July 9 _____, 2026

Respectfully submitted,

**DeAngelo S. Anderson**

*Plaintiff, Pro Se*

1310 Oakcrest Dr., Apt. 1012

Columbia, South Carolina 29223

Telephone: 803-553-0511

Email: Dee.anderson555@yahoo.com